COMMONWEALTH of Pennsylvania,
Appellee

v.

Jason GACOBANO, Appellant.

Superior Court of Pennsylvania.

Submitted March 25, 2013.

Filed April 12, 2013.

Jason Gacobano, appellant, pro se.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, BOWES, and LAZARUS, JJ.

OPINION BY BOWES, J.:

Jason Gacobano appeals from the March 12, 2012 order denying his petition for DNA testing. We affirm.

At approximately 11:30 p.m. on August 28, 1995, the victim, C.W., was asleep in her Philadelphia home when Appellant, Camilio Gonzalez, and a third unidentified male forced their way into the residence. The three men pointed a gun at C.W., and Appellant, who removed a mask that he was wearing, raped the victim in front of his two cohorts. The three men told her that they had been paid to assault her for something that her husband had done. Then, Gonzalez raped C.W. while the unidentified male forced her to perform oral sex on him. During this brutal sexual assault, the victim was told to remain quiet or she would never see her son again. After the assault, C.W. was forced to wash herself in the bathtub, and her ponytail was cut off with a razor. After the three men bound C.W.'s feet and hands together with shoe laces, they were interrupted by police who had been called to the scene.

As police entered, Appellant, Gonzalez, and the third man jumped into the rear yard from the bathroom window. Appellant and Gonzalez were apprehended at the scene and identified as her rapists by C.W. In the area of Appellant's arrest, police recovered the victim's ponytail, a ski mask, vinyl gloves, and a loaded semiautomatic pistol. After she gave a statement to police, C.W. exited the police headquarters and purchased a bag of heroin. She was arrested and encountered Appellant and Gonzalez at the police sta-

tion. While he pretended to shoot a gun at his head, Appellant told C.W. that he would kill her if she testified against him. On August 22, 1996, a jury convicted Appellant of rape, involuntary deviate sexual intercourse, burglary, possession of an instrument of crime, and conspiracy. On November 25, 1996, he was sentenced to fourteen and one-half to fifty years imprisonment.

On July 21, 1998, we affirmed the judgment of sentence and rejected four contentions, including that the trial court erred in determining that C.W. was competent to testify at trial despite the fact that she admittedly was a heroin addict. *Commonwealth v. Gacobano,* 724 A.2d 954 (Pa.Super.1998) (unpublished memorandum). Appellant did not seek review in the Supreme Court. Appellant filed his first PCRA petition on December 14, 1998, counsel was appointed, and counsel filed a petition to withdraw and no-merit letter. The PCRA court denied relief on May 24, 2000, and the ensuing appeal was dismissed after a brief was not filed.

On March 1, 2001, Appellant filed a second PCRA petition that was dismissed. On appeal, we affirmed and specifically concluded that the 2001 petition was untimely and that, under 42 Pa.C.S. § 9545, Appellant had until August 20, 1999, to file a timely PCRA petition. *Common-*

*wealth v. Gacobano,* 815 A.2d 1125 (Pa.Super.2002) (unpublished memorandum). Next, Appellant, on August 10, 2006, filed a petition seeking DNA testing of crime scene evidence. The PCRA court concluded that Appellant was not entitled to post-conviction DNA testing under the pertinent statute, 42 Pa.C.S. § 9543.1.[1] On appeal, we affirmed. *Commonwealth v. Gacobano,* 987 A.2d 813 (Pa.Super.2009) (unpublished memorandum). We noted that under § 9543.1, in order to obtain post-conviction DNA testing, a defendant must establish, as a preliminary matter: 1) that the technology for DNA testing did not exist at the time of trial; 2) counsel did not ask for the testing in a case where the verdict was rendered on or before January 1, 1995; or 3) the indigent defendant sought and was denied DNA testing. We concluded that Appellant could not satisfy any of those mandates in that his jury verdict was rendered after January 1, 1995, DNA testing existed when Appellant was tried, and Appellant never was refused funding for such a test.

On April 18, 2011, Appellant filed a fourth petition for post-conviction relief in which he asked the court to vacate the judgment of sentence based, *inter alia,* on the fact that he was denied DNA testing. He asserted therein that the petition should not be considered a PCRA petition.

1. Under 42 Pa.C.S. § 9543.1(a), if other conditions are satisfied, a defendant can obtain DNA testing:

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's con-

viction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

After the court issued notice of its intent to dismiss the petition without a hearing, Appellant filed a response wherein he again asserted that he was requesting DNA testing of crime scene evidence. That petition was dismissed on March 12, 2012, and, in this ensuing appeal, Appellant asserts, "Did the lower court erred [sic] when it denied petitioner's successive PCRA filing and request for DNA testing of evidence recovered, when petitioner's actual innocence claim rest[s] solely on the results of DNA testing never done and/or presented to the jury?" Appellant's brief at 3.

■ Initially, we note that, when examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review. *See Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super.2011); *Commonwealth v. Brooks*, 875 A.2d 1141 (Pa.Super.2005). "On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super.2012) (quoting *Commonwealth v. Calhoun*, 52 A.3d 281, 284 (Pa.Super.2012)). In the present matter, we are considering the PCRA court's denial of a request for DNA testing. In this context, the filing requirements of 42 Pa. C.S. § 9545 have not yet been implicated. As we noted in *Commonwealth v. Weeks*, 831 A.2d 1194, 1196 (Pa.Super.2003), "Post conviction DNA testing does not directly create an exception to § 9545's one-year time bar. *See* 42 Pa.C.S.A. § 9543.1. Rather it allows for a convicted individual

to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa. C.S.A. § 9545(b)(2). *See* 42 Pa.C.S.A. § 9543.1(f)(1)." [2] *Accord Commonwealth v. Scarborough*, —— Pa. ——, 64 A.3d 602, 609 (2013) ("the litigation of a motion for DNA testing under Section 9543.1 is, in substance, a wholly separate proceeding from litigation of a PCRA petition."); *Commonwealth v. Williams*, 35 A.3d 44, 50 (Pa.Super.2011) ("This Court has consistently held the one-year jurisdictional time bar of the PCRA does not apply to motions for DNA testing under Section 9543.1."). While the PCRA petition filed in this case comingled the DNA test request with other PCRA-based requests for relief, the two forms of relief must be bifurcated and the DNA testing issue is to be addressed first. *Williams, supra*. Furthermore, in this appeal, Appellant only litigates his DNA issue. Thus, we do not apply the provisions of 42 Pa.C.S. § 9545 herein.

■ Nevertheless, we conclude that Appellant is not entitled to DNA testing based upon the doctrine of the law of the case.

The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.... The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy ... but also operate (1) to protect

**2.** 42 Pa.C.S. § 9543.1(f), posttesting procedures, provides:

(1) After the DNA testing conducted under this section has been completed, the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings),

during the 60–day period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief).

the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Commonwealth v. McCandless,* 880 A.2d 1262, 1267 (Pa.Super.2005), *appeal dismissed as improvidently granted,* 593 Pa. 657, 933 A.2d 650 (2007) (quoting *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). Thus, under the doctrine of the law of the case,

> when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous. This rule has been adopted and frequently applied in our own State. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata.* "The prior ruling may have been followed as the law of the case but there is a difference between such adherence and *res judicata;* one directs discretion, and the other supercedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." The rule of the "law of the case" is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power.

*Commonwealth v. McCandless, supra* at 1268 (Pa.Super.2005) (quoting *Benson v. Benson,* 425 Pa.Super. 215, 624 A.2d 644, 647 (1993)).

We have previously ruled that Appellant is not entitled to DNA testing under the statute authorizing such analysis. That ruling applied the pertinent statutory language and was not clearly erroneous. Hence, we affirm.

Order affirmed.