J-S57011-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERNEST MORRIS, | : | |
| | : | |
| Appellant | : | No. 2564 EDA 2013 |

Appeal from the PCRA Order August 20, 2013,
Court of Common Pleas, Montgomery County,
Criminal Division at No. CP-46-CR-0005182-2005

BEFORE:  DONOHUE, MUNDY and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED OCTOBER 10, 2014**

Appellant, Ernest Reginald Morris ("Morris"), appeals from the dismissal of his petition for relief filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46 (the "PCRA").  For the reasons that follow, we affirm the PCRA court's order.

In a prior opinion, the trial court summarized the relevant procedural background of this case through the time of trial as follows:

> On March 24, 2005, Morris was charged with three counts of first-degree murder, three counts of third-degree murder and various other related offenses. The charges stemmed from the January 31, 2005, shooting deaths of Shawne Mims, Jennifer Pennington and Ms. Pennington's unborn child.
>
> Detectives in Montgomery and Philadelphia Counties initially were unable to locate Morris.  On May 1, 2005, Montgomery County Detectives were advised that Morris had been arrested in Georgia. The following day, arrangements were made to have

Morris extradited back to Montgomery County. Morris arrived at the Montgomery County Correctional Facility on May 24, 2005.

On August 12, 2005, the Commonwealth filed a Notice of Intent to Seek Death Penalty. Two weeks later, Todd E. Henry, Esquire, entered his appearance on behalf of Morris. The trial of Morris, and co-defendants Harold Murray and Maurice David Jones, commenced in this court before the Honorable Richard J. Hodgson on January 3, 2006. Following opening statements, the court granted a defense request for mistrial. Morris and his co-defendants subsequently sought to bar retrial on double jeopardy grounds. Judge Hodgson denied that request, and Morris and his co-defendants appealed the adverse double jeopardy ruling to the Superior Court.

On January 7, 2008, the Superior Court denied the appeal, and remanded the case back to this court. The co-defendants timely filed petitions for allowance of appeal with our Supreme Court; Morris, still represented by Henry, did not.

With the case against Morris back in this court, Henry filed a motion to withdraw as counsel on February 15, 2008. On or about February 27, 2008, Morris's family retained Gregory J. Pagano, Esquire ["Attorney Pagano"], to represent Morris. Upon reviewing Morris's file, Pagano discovered that the time to appeal to the Supreme Court from the Superior Court's double jeopardy decision had expired. Consequently, on February 28, 2008, Pagano filed a *nunc pro tunc* petition for allowance of appeal with the Supreme Court. Pagano subsequently withdrew the petition on March 14, 2008.

On April 3, 2008, President Judge Hodgson scheduled the trial of Morris for May 1, 2008, and the case was re-assigned to the undersigned. That same

- 2 -

day, the Commonwealth provided discovery to Pagano.

The undersigned held a pre-trial conference on April 29, 2008. With the agreement of Morris, this court granted the motion to withdraw previously filed by Henry. Pagano then verbalized a desire to withdraw as counsel, citing a lack of payment and the volume of discovery recently provided to him by the Commonwealth. After lengthy on-the-record discussions with Morris regarding his desire to either proceed to trial as scheduled, or to re-file a *nunc pro tunc* petition for allowance of appeal, this court directed Pagano to re-file the petition.

On September 25, 2008, the Supreme Court granted Morris's re-filed Petition for Leave to File Petition for Allowance of Appeal *Nunc Pro Tunc*. The Supreme Court ultimately denied allowance of appeal on May 24, 2009.

With the case returned to Montgomery County, the court issued an Order on June 1, 2009, appointing John I. McMahon, Jr., Esquire ["Attorney McMahon"], to serve as counsel for Morris. At a pre-trial hearing on June 4, 2009, this court scheduled trial for August 24, 2009. The Commonwealth filed an Amended Notice of Intent to Seek Death Penalty on June 12, 2009.

On August 21, 2009, Morris, through counsel, filed a Motion to Dismiss under Pennsylvania Rule of Criminal Procedure 600. After two days of hearings, this court denied Morris's Rule 600 motion in an Order dated August 25, 2009. Trial commenced on September 15, 2009.

On October 14, 2009, the jury found Morris guilty of one count of Criminal Conspiracy, one count of First Degree Murder, two counts of Second Degree Murder, one count of First Degree Murder of an Unborn Child, one count of Kidnapping, two counts of Burglary, four counts of False Imprisonment, one

count of Possession of an Instrument of Crime and one count of Possession of a Weapon. During the penalty phase, the jury informed the court in a written note after more than 10 hours of deliberations that it could not reach unanimity for either the death penalty or life in prison. Instead, the jury unanimously voted to end deliberations on October 19, 2009. This court later sentenced Morris to three consecutive terms of life imprisonment without parole, plus a consecutive term of incarceration of 43 to 90 years.

Morris, through trial counsel, filed a [timely] Notice of Appeal on January 19, 2010. This court issued an Order on January 21, 2010, directing Morris to file a Concise Statement of Matters Complained of on Appeal within 21 days. Morris, through counsel, filed a Concise Statement, and served a copy on the undersigned, on February 12, 2010.

Trial Court Opinion, 3/15/10, at 1-4 (footnotes omitted).

On direct appeal, Morris raised one issue for our consideration, specifically whether the trial court erred in dismissing his motion pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure. On November 1, 2010, this Court affirmed the judgment of sentence.[1] On December 30, 2010, Morris filed a *pro se* PCRA petition seeking the reinstatement of his direct appeal rights so that he could file a petition for allowance of appeal with the Supreme Court of Pennsylvania. After the appointment of new

---

[1] In our memorandum decision, we noted that Morris had filed with this Court a *pro se* brief reiterating counsel's arguments and adding his own, but that we refused to address the new issues raised *pro se* because Morris was represented by counsel at that time. **Commonwealth v. Morris**, 243 EDA 2010, at 4 n.1 (Pa. Super. November 1, 2010) (unpublished memorandum) (citing **Commonwealth v. Pursell**, 724 A.2d 293, 302 (Pa. 1999) and **Commonwealth v. Ellis**, 626 A.2d 1137, 1141 (Pa. 1993)).

counsel, the trial court granted the requested relief. On December 29, 2011, the Supreme Court denied Morris' petition for allowance of appeal.

On July 11, 2012, Morris filed a second PCRA petition. The PCRA court eventually appointed Karen Lee DeMerlis, Esquire, to represent Morris.[2] On May 9, 2013, Attorney DeMerlis filed a petition to withdraw as counsel pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988), on the grounds that based upon her review of the record no meritorious issues existed. On July 21, 2013, the PCRA court permitted Attorney DeMerlis to withdraw as counsel and issued a notice of intent to dismiss Morris' second PCRA petition without an evidentiary hearing pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure. Morris filed multiple objections and replies to the Rule 907 notice, but on August 20, 2013, the PCRA court dismissed Morris' second PCRA petition without an evidentiary hearing. On September 23, 2013, Morris, proceeding *pro se*, filed a Pa.R.A.P. 1925(b) statement, listing 38 issues.[3] On November 12, 2013, the PCRA court filed a written opinion pursuant to Pa.R.A.P. 1925(a).

---

[2] The PCRA court initially appointed the local public defender's office to represent Morris, but the office had a conflict of interest. The PCRA court then appointed Stephen M. Geday, Esquire, but due to Attorney Geday's inability to represent Morris, Attorney DeMerlis was then appointed.

[3] Morris' Rule 1925(b) statement, listing 38 issues for review, is not concise. Rule 1925(b)(4)(iv), however, provides that "the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv), and in **Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417 (Pa. 2007), our Supreme Court instructed that this Court should not find waiver because

On appeal, Morris raises the same 38 issues he set forth in his Rule 1925(b) statement:

1. Did the Honorable Court commit error in its opinion that no objective facts and circumstances existed to prove that the prosecutor intentionally provoked defense counsel into moving for a mistrial in [Morris'] first trial[.]

2. Was the Commonwealth afforded a second, perhaps, more favorable opportunity to convict [Morris] as a result of the mistrial declared in defendant's first trial[.]

3. Was the [trial court's] determination of facts surrounding Double Jeopardy questions unreasonable because the fact finding process was defective due to the prosecution's suppression of evidence favorable to [Morris], forcing the judge(s) to make a decision on an incomplete record[.]

4. Did the prosecutor fabricate evidence to the jury in his opening statement of [Morris'] first trial[.]

5. Was the Commonwealth required to file an affidavit along with subpoena for Cell Site Location Information (CSLI), pursuant to the probable cause standard[.]

6. Did the tactic employed by the Commonwealth to secure Cell Site Location Information (CSLI) violate unlawful search-and-seizure provisions in the State and Federal constitutions and the Pennsylvania Wiretap Act[.]

7. Did [Morris] have a reasonable expectation of privacy with respect to the cell phone signal he was

of the number of issues raised in Rule 1925(b) statements unless the trial court finds that the appellant acted in bad faith. *Id.* at 420-21. Because the PCRA court did not find that Morris acted in bad faith, we will not quash his appeal on this basis.

using, at the time(s) he was using the cellphone in his possession[.]

8. Did the Commonwealth violate the 'stored communications' provision of the Wiretap Act in its obtainment of Cell Site Location Information in [Morris'] case[.]

9. Was the warrantless search and seizure of Cell Site Location Information (CSLI) permissible absent the [c]ourt's determination that both probable cause and exigent circumstances existed, as set forth in the jurisprudence of both the state Superior Court and Supreme Court[.]

10. Did the Commonwealth have a continuing duty to promptly disclose subpoena for Cell Site records [] received from Nextel Phone Company before the adjudication of [Morris'] Double Jeopardy [a]ppeal, pursuant to Pa.R.Crim.P. 573 and **Brady v. Maryland**, 373 US 83 (1963)[.]

11. Did the Honorable Court violate [Morris'] Due Process rights when it failed to initiate an inquiry and resolve conflict between [Morris] and defense counsel after several pretrial warnings[.]

12. Did the Honorable Court's decision to allow attorney Gregory Pagano to represent [Morris] as first-chair counsel in pretrial and on [i]nterlocutory [a]ppeal to Supreme Court violate the legislative intent of the Supreme Court, pursuant to Title 1 Pa.C.S.A. § 1921(b) and Pa.R.Crim.P. 801[.]

13. Was [Morris] prejudiced when he was represented by unqualified counsel Pagano, who failed to obtain 801 certification, pursuant to Pa.R.Crim.P. 801 and the jurisprudence of both the state Superior Court and Supreme Court[.]

14. Did the Honorable Court commit error by allowing the Commonwealth to introduce Cell Site evidence at trial[.]

15. Did the Honorable Court commit error in its opinion that [Morris] did not have standing to challenge the admission of Cell Site evidence as an aggrieved person[.]

16. Was trial counsel ineffective for abandoning [Morris'] Double Jeopardy claim, and failing to raise objective facts and circumstances of the prosecutor's intent to provoke defense counsel into moving for a mistrial to gain a tactical advantage[.]

17. Was trial counsel ineffective for failing to investigate witnesses who provided notarized affidavit(s), or contradicting statements which could provide reasonable doubt[.]

18. Was trial counsel ineffective for failing to argue that the Cell Site evidence should be suppressed pursuant to the Fruit-Of-The-Poisonous-Tree Doctrine because the evidence was illegally obtained by the Commonwealth[.]

19. Was trial counsel ineffective for failing to establish that [Morris] had standing to challenge the admission of Cell Site evidence because appellant was an aggrieved person[.]

20. Was trial counsel ineffective for failing to argue that the prosecutor should have requested a hearing outside of the presence of jury when witness (Saleema Whitfield) expressed in an affidavit of probable cause for Search & Seizure Warrant her contemplation to assert her Fifth Amendment privilege rather than question the witness in front of the jury[.]

21. Did the conduct of the district attorney regarding witness Saleema Whitfield's intention to 'plea The Fifth' if called to testify at [Morris'] trial, the prosecutor failing to bring that information to the [c]ourt's attention display extraordinary course of

prosecutorial overreaching taken in deliberate bad faith[.]

22. Did the prosecutor's conduct surrounding Ms. Whitfield's intention to invoke her Fifth Amendment privilege constitute a deliberate attempt to force [Morris] to move for a mistrial, or at the least, prosecutorial overreaching, bad faith harassment designed to prejudice [Morris'] prospects for acquittal[.]

23. Did the prosecutor knowingly use false testimony to convict [Morris.]

24. Was trial counsel ineffective for suggesting a trial strategy that contradicted [Morris'] plea of 'not guilty'[.]

25. Was trial counsel ineffective for requesting accomplice liability instruction since [Morris] was not charged with accomplice liability by statue [*sic*] in Bills of Information[.]

26. Did the Honorable Court commit error by allowing the prosecutor to suggest to the jury that they could find [Morris] guilty based on the accomplice liability principle[.]

27. Was trial counsel ineffective for failing to object to the prosecutor's suggestion to the jury that they should find [Morris] guilty based on the accomplice liability principle[.]

28. Was trial counsel ineffective for failing to raise and preserve more than one (1) issue on direct appeal[.]

29. Did the [Commonwealth] act in bad faith, harass or prejudice appellant when the district attorney's office contacted the Pennsylvania Supreme Court's Prothonotary's Office and suggest the [Morris] did not want to appeal and the [C]ourt should deny and remand the case, so that the Commonwealth could

gain an unfair advantage by trying [Morris'] case with his codefendants[.]

30. Did trial judge commit error when he and attorney Pagano spoke 'off-the-record' regarding [Morris'] pending proceeding without [Morris] present, knowing a conflict of interest existed between [Morris] and Pagano[.]

31. Was PCRA counsel ineffective for failing to argue and preserve 'layered ineffectiveness' claim[.]

32. Did the anxiety caused by the intentional prosecutorial misconduct raise systematic concerns, beyond a specific right to fair trial, left unaddressed by retrial[.]

33. Did the Honorable Court apply an incorrect standard of law or misapply the appropriate standard in its decision of [Morris'] issues[.]

34. Were all counsels to date ineffective, pursuant to the provisions of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1 § 9, Article 1 § 10 of the Constitution of the Commonwealth of Pennsylvania[.]

35. Did the Sentencing Court commit error by not considering [Morris'] age and state of maturity and all relevant factors before imposing sentence[.]

36. Does Pennsylvania's mandatory life without parole sentencing scheme violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article 1 § 6, Article 1 § 9, Article 1 § 13 and Article 1 § 26 of the Constitution of the Commonwealth of Pennsylvania[.]

37. Did the theory of 'transferred intent' unfairly prejudice [Morris], violating the Fifth, Sixth, Eighth and Fourteenth Amendment to the United States Constitution and Article 1 § 6, Article 1 § 9, Article 1

§ 13, Article 1 § 26 of the Constitution of the Commonwealth of Pennsylvania[.]

38. Did the Honorable Court commit error when it dismissed [Morris'] PCRA petition without a hearing after [Morris] raised several material issues of fact[.]

Morris' Brief at 5-9.

When considering the propriety of an order denying a request for relief under the PCRA, our standard of review is to determine whether the ruling of the PCRA court is supported by the certified record on appeal and is free of legal error. **Commonwealth v. Gacobano**, 65 A.3d 416, 419 (Pa. Super. 2013); **Commonwealth v. Nero**, 58 A.3d 802, 805 (Pa. Super. 2012); **Commonwealth v. Calhoun**, 52 A.3d 281, 284 (Pa. Super. 2012).

To obtain PCRA relief, the petitioner must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.A. § 9543(a)(2), his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." **Id.** § 9543(a)(3)-(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." **Id.** § 9544(a)(2). An issue is waived if the petitioner "could have raised it but failed to do so before trial, at trial, ...

on appeal or in a prior state post-conviction proceeding." ***Id.*** § 9544(b);

***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013)

Based upon these principles, a majority of the issues raised here by Morris have not been preserved for appellate review at this time. A prior panel of this Court decided Morris' first and thirty-third issues on appeal in a memorandum decision dated January 7, 2008, concluding that the trial court did not err in denying Morris' motion to bar a re-trial on double jeopardy grounds.[4] ***Commonwealth v. Jones, Morris & Murray***, 138, 165, 211 EDA 2006, at 17 (Pa. Super. January 7, 2008) (unpublished memorandum). In addition, we find that issues 2-15,[5] 21-23, 26, 29, 30, 33, and 35-37 are

---

[4] In his appellate brief, Morris challenges the prior panel's decision, claiming that it was "contrary to well established federal law." Morris' Brief at 15. Based upon the "law of the case" doctrine, however, this panel may not reverse the decision of a prior panel. ***See, e.g.***, ***Commonwealth v. Reed***, 971 A.2d 1216, 1220 (Pa. 2009) (citing ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995) ("Among the related but distinct rules which make up the law of the case doctrine are that: … (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court ….").

[5] Although presented here as trial court errors, both the PCRA court and the Commonwealth addressed Morris' twelfth and thirteenth issues as claims of ineffective assistance of counsel. In these two claims, Morris argues that he was prejudiced because the trial court permitted him to be represented by Attorney Pagano in a death penalty case even though Attorney Pagano had not received certification pursuant to 234 Pa.Code § 801 to represent defendants in death penalty cases. Morris' Brief at 30-38. This issue, however, was previously litigated, as it was raised on direct appeal in connection with arguments related to the Rule 600 issue. In our November 1, 2010 memorandum decision, this Court ruled that "any error the trial court committed in permitting Mr. Pagano to represent [Morris] prior to trial was harmless." Morris, ***supra*** n.3, at 9. As this decision is now the law of

- 12 -

all waived,[6] as they could have been (but were not) raised on direct appeal, and Morris has not alleged that appointed counsel's decision to forego these issues on direct appeal "could not have been the result of any rational, strategic or tactical decision by counsel."[7]  42 Pa.C.S.A. § 9543(a)(4).

Morris' preserved issues for appeal all involve allegations of ineffective assistance of counsel.  To obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in **Strickland v. Washington**, 466 U.S. 668, 687 (1984).  In Pennsylvania, we apply the **Strickland** test by looking to three elements.  To wit, the petitioner must establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the

the case, Morris could not possibly establish prejudice necessary to support an ineffectiveness claim.

[6]  Issues thirty-two and thirty-five through thirty-seven are also waived because Morris included no argument in support of them in his current appellate brief.  **See, e.g.**, **Commonwealth v. Stilley**, 689 A.2d 242, 246 (Pa. Super. 1997) ("This argument is completely unsupported and made without reference to case law or legal analysis.  We, therefore, will not address it.").

[7]  In connection with his twenty-eighth issue, Morris essentially admits that his appointed counsel waived these issues intentionally on direct appeal by utilizing a specific strategy – namely to focus this Court's attention squarely and exclusively on the Rule 600 issue by foregoing consideration of all other issues on appeal.  Morris' Brief at 54.  Morris now argues that this strategy was unreasonable and that as a result counsel was ineffective for waiving issues on direct appeal.  **Id.**  We will address this issue hereinbelow.

- 13 -

result of the proceeding would have been different. ***See, e.g.***, ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987). Counsel is presumed to have rendered effective assistance. ***See, e.g.***, ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013). A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority, and if a claim fails under any necessary element of the three-element test, the court may proceed to that element first. ***See, e.g.***, ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998).

For his sixteenth issue on appeal, Morris contends that his appointed trial counsel (Attorney McMahon) was ineffective because he "abandoned" efforts to bar a retrial on double jeopardy grounds. To understand Morris' somewhat convoluted argument, we must remind that the trial court declared a mistrial after opening arguments in Morris' first trial, based on a reference by the prosecutor to a statement to police made by one of Morris' co-defendants. On January 7, 2008, this Court affirmed the trial court's denial of Morris' motion to bar a retrial on double jeopardy grounds, rejecting Morris' contention that the prosecutor had goaded Morris' counsel into moving for a mistrial. ***See, e.g.***, ***Commonwealth v. Smith***, 615 A.2d 321 (Pa. 1992) (double jeopardy clause prohibits re-trial of a defendant when prosecutorial misconduct is intended to provoke defendant into moving for mistrial, or when the conduct of the prosecutor is intentionally undertaken to prejudice defendant and deny him a fair trial). On May 24,

2009, our Supreme Court denied Morris' petition for allowance of appeal of our decision.

During the pendency of these appeals, the Commonwealth subpoenaed and obtained phone records for the cell phone of Morris' girlfriend. These records, which placed Morris at the scene of the crime, were subsequently used against him at his second trial. Attorney McMahon received copies of these phone records from the Commonwealth in or around April 2008, and Morris now argues that Attorney McMahon should have filed a new motion to bar a retrial on double jeopardy grounds using the phone records to bolster his arguments. According to Morris, his prior double jeopardy motions and appeals were decided on an "incomplete record," since the phone records provided new evidence that the prosecutor intentionally goaded defense counsel into seeking a mistrial – namely to buy him more time before a second trial to obtain said phone records to use against Morris in a second trial.[8] Morris' Brief at 39-41 ("Apparently someone dropped the ball in securing cell site records relating to [Morris] prior to the first trial, so aborting trial in favor of gathering stronger evidence against [Morris] in a second bite at the apple was ideal.").

---

[8] Morris also argues that the "cell site evidence establishes not only did the D.A. reference inadmissible heresy [*sic*], but he also fabricated evidence to the jury." Morris' Brief at 40. As we cannot fathom how these points (even if true) have any bearing on Morris' sixteenth issue on appeal, we cannot grant any relief on these bases.

In our January 7, 2008 memorandum decision, we rejected Morris' double jeopardy arguments on two independent grounds. First, we concluded that no evidence of record supported Morris' claims of intentional misconduct by the prosecutor. Morris, *supra*, at 6 ("[W]e would agree with the trial court that there was no evidence of intentional misconduct."). Second, we ruled that the prosecutor had not erred in referencing the co-defendant's statement to police, as it would have been admissible at trial. *Id.* at 10. In particular, we indicated that the statement of Morris' co-defendant did not directly incriminate Morris, as the co-defendant, rather than confessing, had denied having anything to do with the victims' murders or even knowing Morris at all. *Id.*

As a result, even if the subsequently obtained cell phone records could have, hypothetically, been offered as some evidence of the prosecutor's intentional misconduct, a second motion to bar a retrial on double jeopardy grounds had no chance for success. If such a motion had been filed, the trial court would have been bound to follow our ruling in the January 7, 2008 memorandum decision, which decision foreclosed any possibility that relief could have been granted to Morris thereon. Attorney McMahon cannot be deemed ineffective for failing to raise a meritless claim. *See, e.g.*, *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006).

For his seventeenth issue on appeal, Morris argues that Attorney McMahon failed to investigate "witnesses who provided notarized affidavits,

or contradicting statements which could provide reasonable doubt." When raising a failure to call a potential witness claim, the PCRA petitioner must show, at a minimum, that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). To demonstrate prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008); *see also Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense."); *Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009).

Morris has not identified any potential witness who satisfies these requirements. In his appellate brief, he identifies one potential witness, Donna Calhoun, who could potentially point to other individuals who were apparently seen in the area of the crime on the night in question and who were apparently looking for one of the victims. Morris' Brief at 42. Morris provides no basis, however, by affidavit or otherwise, that Calhoun was

known to Attorney McMahon or was available and/or willing to testify in Morris' case at trial.

In connection with this issue, Morris also contends that Attorney McMahon failed to investigate DNA evidence on cigarette butts at the scene of the crime. According to Morris, this DNA evidence could have "scientifically excluded" him from being at the scene of the crime, since the Commonwealth posited that victim Jennifer Pennington was allowed to smoke a final cigarette before her murder. *Id.* We cannot conceive of how this evidence could possibly be exculpatory for Morris, however, since at best it would show that Morris did not smoke the cigarettes that were tested – which would prove nothing with regard either to his presence at the scene or his participation in the crimes at issue.

For his eighteenth and nineteenth issues on appeal, Morris contends that Attorney McMahon was ineffective for failing to argue that the cell phone reports should have been suppressed and that he had standing to seek their suppression. The issue of suppression was extensively litigated prior to the second trial, with the trial court ruling ultimately denying the suppression motion on the grounds that Morris lacked standing because he had no possessory interest in the cell phone at issue.

"The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary

rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Hawkins***, 718 A.2d 265, 266 (Pa. 1998). As this Court has summarized:

> A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. ***Commonwealth v. Hawkins***, 718 A.2d 265, 267 (Pa. 1998); ***Commonwealth v. Black***, 758 A.2d 1253, 1256–1258 (Pa. Super. 2000); ***Commonwealth v. Torres***, 764 A.2d 532, 542 (Pa. 2001); ***Commonwealth v. Perea***, 791 A.2d 427, 429 (Pa. Super. 2002). Whether [a] defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. ***See Commonwealth v. Millner***, 888 A.2d 680, 691 (Pa. 2005). The determination whether [a] defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

***Commonwealth v. Powell***, 994 A.2d 1096, 1103-04 (Pa. Super. 2010) (quoting ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*).

The parties do not dispute the basic factual predicate on which the trial court ruled with respect to the suppression of the cell phone records. On the night of the crime, Morris had borrowed the cell phone of his girlfriend,

Saleema Whitfield ("Whitfield"). Pursuant to a subpoena issued to Sprint Nextel, in or around April 2006, the Commonwealth obtained the records for this cell phone for the date in question, including cell tower information showing the approximately location of where calls were made that night. At the second trial, the Commonwealth used these cell phone records to place Morris at the scene of the crime. **See** Morris' Brief at 43, 45.

The trial court ruled, and we agree, that Morris lacked standing to suppress the cell phone records. He was not present at the time of production of the records, and possession of the cell phone and its records was not an essential element of any of the crimes with which he was charged or convicted.[9] Because the cell phone belonged to Whitfield, Morris, who was merely borrowing it that night, had no possessory interest in either the cell phone or the records for it obtained by subpoena. Moreover, the trial court properly ruled that Morris had no reasonable expectation of privacy either in the phone itself or any information associated with its use on the night in question. Morris returned the borrowed phone to Whitfield soon thereafter, apparently without erasing any information on it, thus providing Whitfield with access to its contents.[10]

---

[9] Morris was convicted of possession of an instrument of crime and possession of a weapon, but the essential element for these crimes was possession of the gun, not the cell phone or its records.

[10] Morris also argues that the trial court erred in finding that Whitfield consented to a search of the contents of her cell phone. Whether or not

- 20 -

Contrary to Morris' contentions, Attorney McMahon litigated the issues surrounding the cell phone records, but the trial court, in its discretion, ruled in favor of the Commonwealth. As a result, Morris' ineffectiveness claim on this basis lacks any merit and no relief is due.

For his twentieth issue on appeal, Morris argues that Attorney McMahon was ineffective for failing to insist that the prosecutor request a hearing outside of the presence of jury when Whitfield, during pre-trial proceedings before the second trial, indicated that she would consider asserting her Fifth Amendment privilege if called to testify against Morris (principally regarding ownership of the above-discussed cell phone). Morris' claim of ineffectiveness on this basis is moot, since Whitfield testified at the second trial and did not assert a Fifth Amendment privilege.

For his twenty-fourth issue on appeal, Morris claims that Attorney McMahon was ineffective for recommending to him that, instead of claiming his complete innocence, he take the position at trial that while he accompanied his two co-defendants on the night in question (as their driver), he did not know or want anyone to get hurt or killed.[11] Morris' Brief

_____

Whitfield consented to the search, however, is irrelevant to a determination of Morris' standing to seek suppression of the evidence at issue.

[11] In its appellate brief, the Commonwealth contends that Attorney McMahon had a reasonable strategy for offering this advice, namely to avoid a death sentence for Morris' part in the murders. Commonwealth's Brief at 27. The Commonwealth notes that this was a reasonable approach, both because of the overwhelming nature of the evidence against him and

at 50. With respect to this issue, however, Morris has provided this Court with no basis on which to conclude that he suffered any prejudice, including no identification of any evidence or alternative strategy that counsel could have utilized that would have resulted in a reasonable probability that the result of trial would have been different. As a result, in the absence of a showing of prejudice, no relief is due on this issue.

For his twenty-fifth and twenty-seventh issues on appeal, Morris claims that Attorney McMahon was ineffective for requesting a jury charge on accomplice liability and for not objecting when the Commonwealth argued accomplice liability to the jury. Morris' Brief at 51-53. Morris points out that although he was charged with conspiracy, he was not also charged with accomplice liability, and counsel's actions in effect reduced the Commonwealth's burden to prove his guilt as a principal. *Id.*

These ineffectiveness claims are meritless. A defendant may be convicted as an accessory though only charged as a principal. ***Commonwealth v. Spotz***, 716 A.2d 580, 588 (Pa. 1998); ***Commonwealth v. Melvin***, 2014 WL 4100200, at *37 n.30 (Pa. Super. Aug. 21, 2014). As long as the defendant is put on notice that the Commonwealth may pursue theories of liability that link the defendant and

---

because it was successful. *Id.* In the absence of an evidentiary hearing, however, the certified record contains no testimony from Attorney McMahon as to his actual strategic basis, and we may not speculate in this area when ruling on an ineffectiveness claim. ***Commonwealth v. Williams***, 899 A.2d 1060, 1065 (Pa. 2006).

another in the commission of crimes, the defendant cannot claim that the Commonwealth's pursuit of such a theory surprised and prejudiced him. ***Commonwealth v. Potts***, 566 A.2d 287, 293 (Pa. Super. 1989); ***Commonwealth v. Smith***, 482 A.2d 1124, 1126 (Pa. Super. 1984). A charge of criminal conspiracy puts a defendant on sufficient notice of the Commonwealth's intention to argue a link between that defendant and another person in the commission of the crimes in question. ***Commonwealth v. McDuffie***, 466 A.2d 660, 662 (Pa. Super. 1983) ("Such notice was clearly adequate to alert appellant to the potential imposition of criminal liability as an accomplice of Mr. Warren.").

For his twenty-eighth issue on appeal, Morris argues that Attorney McMahon, as direct appeal counsel, was ineffective for preserving just one issue (Rule 600) for appeal. Based upon our review of his appellate brief and the certified record on appeal, however, and as set forth hereinabove, Morris has not identified any meritorious issue that Attorney McMahon failed to pursue on direct appeal. For this same reason, we must reject Morris' thirty-first and thirty-fourth issues on appeal, pursuant to which he contends all of his attorneys have provided ineffective assistance of counsel (including claims of layered ineffectiveness). To secure relief on claims for layered ineffectiveness, an appellant must plead and prove ***Strickland***/***Pierce*** ineffectiveness as to each relevant layer of representation. ***See, e.g.***, ***Commonwealth v. Robinson***, 82 A.3d 998, 1005-06 (Pa. 2013);

*Commonwealth v. Ali*, 10 A.3d 282, 292 (Pa. 2010); *Commonwealth v. McGill*, 832 A.2d 1014, 1023 (Pa. 2003). There can be no layered ineffectiveness claims, however, in the absence of any meritorious ineffectiveness claims.

Finally, for his thirty-eighth issue on appeal, Morris claims that the trial court erred in dismissing his second PCRA petition without an evidentiary hearing. Rule 908(A) of the Pennsylvania Rule of Criminal Procedure provides that a judge shall order a hearing when a petition for PCRA relief raises material issues of fact. Pa.R.Crim.P. 908(A); *Commonwealth v. Hutchinson*, 25 A.3d 277, 320 (Pa. 2011). Where a PCRA petition does not raise material issues of fact and the petitioner's claims may be disposed of based upon the then-existing record, however, a PCRA court does not abuse its discretion in dismissing the petition without an evidentiary hearing. *See Commonwealth v. Rush*, 838 A.2d 651, 659–60 (Pa. 2003). Although Morris now contends that he has raised "a multitude of material facts," our review of his second PCRA petition, the certified record on appeal, and his appellate brief has not uncovered any such issues necessitating an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014