J-S70027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ADMIRAL PERRY | |
| Appellant | No. 1160 EDA 2014 |

Appeal from the PCRA Order March 19, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001239-2001

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED DECEMBER 02, 2014**

Appellant, Admiral Perry, appeals from the March 19, 2014 order denying his motion for DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1]  After careful review, we affirm.

In a prior published opinion, a panel of this Court summarized the relevant factual and procedural background of this case as follows.

> On June 26, 1980, Kay Aisenstein left her home in the city of Philadelphia and did not return.  At the time and place of Aisenstein's disappearance, a witness, Richard Sussman, saw a young, light-

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Our Supreme Court has held that an order disposing of a motion for DNA testing under the PCRA is a final order that is immediately appealable. **Commonwealth v. Scarborough**, 64 A.3d 602, 609 (Pa. 2013).

skinned, black male speeding from an alleyway in a 1975 Chevrolet Malibu with its lights off. Richard Sussman and his father, Charles Sussman, were interviewed by police that night and a police sketch artist produced a composite sketch based upon a description of the driver. Richard Sussman was shown mug books, but was unable to make an identification at that time. The next morning, Aisenstein's body was found in Delaware County, beaten, strangled and raped. On June 28, 1980, the Chevrolet Malibu was located in Philadelphia. Samples of what appeared to be blood were collected from the car. These samples were analyzed by a crime lab in June or July of 1980, and then repackaged for storage. No further progress was made in the investigation until 1992.

In 1992, Richard Sussman was shown a photographic array, and he identified Appellant as the man he saw driving from the alleyway in June of 1980. In 1994, police obtained a search warrant to withdraw a blood sample from Appellant. In 1995, forensic DNA technology unavailable in 1980 enabled police to test the preserved blood evidence taken from the Chevrolet Malibu. The testing determined that the blood on the items taken from the vehicle came from two different people: the first was identified as Aisenstein, and the second was identified as Appellant. N.T., 9/24/2003, at 75–76.

At trial, the Commonwealth built its case largely on the 1992 photographic identification of Appellant by Richard Sussman, similarities between the composite sketch prepared by the police sketch artist and a 1980 photograph of Appellant, and the DNA evidence. On September 25, 2003, Appellant was convicted of first-degree murder, kidnapping, involuntary deviate sexual intercourse, and rape in connection with the death of Aisenstein. On September 30, 2003, Appellant was sentenced to life in prison without parole on the murder charge, and an aggregate sentence of thirty to sixty years' imprisonment on the remaining convictions, to run consecutive to the sentence Appellant was already

> serving. Appellant filed timely post-sentence motions, which were denied. He filed a timely appeal, and this Court affirmed the judgment of sentence on June 23, 2005. On December 29, 2005, our Supreme Court denied Appellant's petition for allowance of appeal.
>
> On February 1, 2006, Appellant filed a timely, *pro se,* PCRA petition and was appointed counsel. PCRA counsel filed a [no-merit] letter [pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), and their progeny] seeking to withdraw his appearance. Counsel was permitted to withdraw and on July 19, 2007, the PCRA court denied Appellant's petition without a hearing.

***Commonwealth v. Perry***, 959 A.2d 932, 934 (Pa. Super. 2008) (footnotes omitted). On September 15, 2008, this Court affirmed the PCRA court's order dismissing Appellant's first PCRA petition. ***Id.*** at 939. Relevant to the instant appeal, this Court concluded that under our Supreme Court's decision in ***Commonwealth v. Williams***, 899 A.2d 1060 (Pa. 2006), Appellant was not eligible for DNA testing under the PCRA because "the technology existed at the time of his trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing." ***Perry***, ***supra*** at 938-939, *quoting* ***Williams***, ***supra*** at 1063. Appellant did not file a petition for allowance of appeal in our Supreme Court.

On March 25, 2013, Appellant filed a "Petition for Post Conviction DNA Testing Pursuant to 42 Pa. C.S.A. § 9543.1." The PCRA court appointed counsel. The Commonwealth filed its answer on December 5, 2013. On

February 19, 2014, the PCRA court entered an order notifying Appellant of its intent to dismiss Appellant's DNA motion without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. Appellant filed a *pro se* response on March 7, 2014, although he was still represented by counsel. On March 19, 2014, the PCRA court entered its final order dismissing Appellant's DNA motion. On April 16, 2014, Appellant filed a timely notice of appeal.[2]

On appeal, Appellant presents one issue for our review.

> I. Was the [PCRA] court in error for dismissing [Appellant]'s amended petition for [PCRA] relief regarding after-discovered evidence and a request that said evidence be made available for DNA testing?

Appellant's Brief at 4.

"Initially, we note that, when examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review." ***Commonwealth v. Gacobano***, 65 A.3d 416, 419 (Pa. Super. 2013) (citations omitted). "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record,

---

[2] Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

viewed in the light most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." ***Commonwealth v. Robinson***, 82 A.3d 998, 1013 (Pa. 2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted). We further note that "[m]otions for post-conviction DNA tests [pursuant to Section 9543.1], while considered post-conviction petitions under the PCRA, are clearly separate and distinct from claims pursuant to other sections of the PCRA." ***Perry***, ***supra*** at 938.

In the case *sub judice*, Appellant avers that the PCRA erred in denying his DNA motion because Appellant reviewed a letter from Genetic Consultant Services (GCS) dated June 1, 2002 which "suggest[ed] … that several of the samples as to the DNA evidence were inconclusive." Appellant's Brief at 11. The Commonwealth counters that Appellant's DNA petition is barred by the law of the case doctrine. Commonwealth's Brief at 10.

This Court has previously described the law of the case doctrine as follows.

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the

- 5 -

matter …. The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy … but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005), *appeal dismissed as improvidently granted,* 593 Pa. 657, 933 A.2d 650 (2007) (quoting *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). Thus, under the doctrine of the law of the case,

when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous. This rule has been adopted and frequently applied in our own State. It is not, however, inflexible. It does not have the finality of the doctrine of *res judicata.* "The prior ruling may have been followed as the law of the case but there is a difference between such adherence and *res judicata;* one directs discretion, and the other supercedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." The rule of the "law of the case" is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power.

[*McCandless*, *supra* at 1268.]

*Gacobano*, *supra* at 419-420.

In **Gacobano**, the defendant filed his first DNA motion under the PCRA in 2006, which the PCRA court denied on statutory grounds. **Id.** at 418. On appeal, this Court affirmed in an unpublished memorandum, concluding that, just as it did in our 2008 opinion in this case, that Gacobano could not meet any of the three preliminary conditions for DNA testing. **Id.** Also similar to this case, the **Gacobano** Court concluded that Gacobano "could not satisfy any of those mandates in that his jury verdict was rendered after January 1, 1995, DNA testing existed when Appellant was tried, and Appellant never was refused funding for such a test." **Id.** Gacobano then filed another petition seeking to vacate his judgment of sentence on the grounds that he was denied DNA testing. **Id.** Construing this petition as a DNA motion under Section 9543.1, this Court concluded that the law of the case doctrine barred consideration of this new DNA motion. Specifically, this Court noted that "[w]e ha[d] previously ruled that Appellant is not entitled to DNA testing under the statute authorizing such analysis. That ruling applied the pertinent statutory language and was not clearly erroneous." **Id.** at 420. Accordingly, this Court affirmed the PCRA court's order on this basis. **Id.**

In the case *sub judice*, this Court previously concluded in 2008 that Appellant was statutorily ineligible for DNA testing under Section 9543.1 due to his inability to show that any of the three preliminary requirements were satisfied. **See Perry**, **supra** at 938-939. Like in **Gacobano**, a prior panel of this Court applied the requirements of Section 9543.1, and Appellant has

not shown that its previous legal conclusion was "clearly erroneous."

***Gacobano***, ***supra***. Instantly, Appellant argues that he only discovered in 2013 that GCS's 2002 letter stated that "several of the samples as to the DNA evidence were inconclusive … [and h]is attorney chose not to utilize this report in [Appellant]'s defense." Appellant's Brief at 11. This does not alter Appellant's eligibility under Section 9543.1, as it does not change Appellant's failure to show any of the preliminary requirements under the statute.[3] As a result, Appellant's arguments as to his DNA motion are barred by the law of the case doctrine. ***See Gacobano***, ***supra*** at 419-420.

_____

[3] Appellant does not specifically couch this line of argument in his brief as an independent ineffective assistance of counsel claim, which would be subject to the PCRA and its time-bar. ***See*** Appellant's Brief at 11. Therefore, we do not address it as such.

We also note that in his original motion, Appellant alleged an additional claim for relief under Section 9543(a) of the PCRA alleging ineffective assistance of counsel, independent of his request for relief under Section 9543.1. Appellant's Motion for DNA Testing, 3/25/13, at 2-5. Based upon our review of the certified record, it appears that the PCRA court addressed all of these claims under both sections of the statute in its Rule 907 notice and in its Rule 1925(a) opinion. ***Cf. Commonwealth v. Brooks***, 875 A.2d 1141, 1148 (Pa. Super. 2005) (stating, "[w]e have held that a PCRA petition cannot be used to make a motion for DNA analysis … and the reverse is surely true as well[]"). However, on appeal, Appellant only argues that the PCRA court erred when it denied his claim for DNA testing under Section 9543.1. ***See*** Appellant's Brief at 10-11; Appellant's Rule 1925(b) Statement, 6/9/14, at 1 (stating the sole issue on appeal as "[w]as the [PCRA c]ourt in error for dismissing [Appellant]'s [a]mended [p]etition for [PCRA r]elief regarding after-discovered evidence and a request that said evidence be made available for DNA testing[]"). Therefore, said claim is not before us in the instant appeal.

Based on the foregoing, we conclude the PCRA court properly denied Appellant's motion for DNA testing under Section 9543.1. Accordingly, the PCRA court's March 19, 2014 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2014