J-S78016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARED MOORE | |
| Appellant | No. 1962 WDA 2015 |

Appeal from the Order Entered November 3, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0018117-2003

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                          **FILED MARCH 21, 2017**

Jared Moore appeals, *pro se*, from the November 3, 2015, order denying his motion for deoxyribonucleic acid (DNA) testing pursuant to Section 9543.1 of the Post-Conviction Relief Act (PCRA).[1]  Moore seeks relief from the judgment of sentence of a term of life imprisonment imposed on June 30, 2008, after he was convicted of first-degree homicide, second-degree homicide, criminal conspiracy, kidnapping, robbery, terroristic threats, unlawful restraint, theft by unlawful taking, false imprisonment, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541-9546.

abuse of a corpse.[2]   On appeal, Moore claims the PCRA court abused its discretion in finding he had not made a *prima facie* case that DNA testing, if exculpatory, would establish his innocence.   Based on the following, we affirm.

The facts underlying Moore's convictions were recounted by this Court in the memorandum decision affirming Moore's judgment of sentence on direct appeal:

> The evidence revealed that [Moore] and his co-conspirator, Melissa Galo ["Ms. Galo"], abducted the victim, Karen Hanyo ["the victim"], on November 28, 2003, and [Moore] stabbed her to death. [Moore] and Ms. Galo arrived at the victim's residence during the early morning hours of November 28, 2003, and pushed their way into the residence, demanding to speak with the victim.   [Moore] demanded [that] the victim pay him the $50.00 he claimed she owed him for crack cocaine, while Ms. Galo angrily accused the victim of having sex with her man ([Moore]) for crack.   Ms. Galo struck the victim[,] and [Moore] used a knife to threaten the victim, jabbing her with his knife, threatening to cut out her eyes, [and] then cutting off her clothes.   [Moore] continued to demand $50.00 from the victim. The victim called a friend, Sharon George ["Ms. George"], but was unable to obtain the $50.00.   [Moore] responded by forcing the victim to accompany him and Ms. Galo to Ms. George's house to request the money.   The victim was allowed to put on a coat, but was otherwise naked.   [Moore] removed the cell phones from the residence and cut the land-line wires.
>
> Several witnesses testified to seeing the victim captive in the back seat of the car driven by Ms. Galo.   Ms. George saw the victim in the back seat of the car but refused to give her any money.   [Moore's] friend, Randall Stoddard, temporarily rode in the car and testified that Ms. Galo drove the car while [Moore]

---

[2]   18 Pa.C.S. §§ 2502(a) and (b), 903(a)(1), 2901(a), 3701(a)(1)(i), 2706(a)(1), 2902(a)(1), 3921(a), 2903, and 5510, respectively.

held the victim captive in the back seat, blindfolded, with a knife to her neck.

Ms. Galo testified for the Commonwealth and agreed to enter a guilty plea to third degree murder, kidnapping, robbery, etc[.], [] in exchange for a 20 to 40 year [prison] sentence. Ms. Galo testified that after she stopped the car and duct-taped the victim's hands, legs, and mouth, [Moore] pulled the victim out of the car and repeatedly stabbed the victim. [Moore] stabbed the victim 17 times, inflicting fatal wounds to her chest and neck. [Moore] gave a statement to detectives after he was properly informed of his **Miranda** rights. [Moore] initially claimed that Ms. Galo stabbed the victim, but then admitted that he also stabbed the victim.

***Commonwealth v. Moore***, 990 A.2d 49 [1248 WDA 2008] (Pa. Super. 2009) (unpublished memorandum at 1-2), *citing* Trial Court Opinion, 2/23/2009, at 2-3, *appeal denied*, 992 A.2d 124 (Pa. 2010).

At the conclusion of a bench trial on April 4, 2008, the trial court convicted Moore of the crimes stated above. On June 30, 2008, the court sentenced Moore to life in prison on the first-degree murder conviction, but imposed no further penalty on the second-degree murder conviction. Moreover, the court imposed an aggregate sentence of 76 to 152 months' imprisonment on the remaining convictions, to run consecutively to the life sentence.

Moore filed a direct appeal, claiming the court erred when it convicted him of both first and second-degree murder for the same act. A panel of this Court affirmed his judgment of sentence on December 22, 2009, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on April 6, 2010. **See id.** Thereafter, Moore filed his first PCRA petition,

- 3 -

which was denied by the PCRA court on February 29, 2012, and dismissed by this Court on October 16, 2012, for failure to file a brief.

On March 19, 2014, Moore filed a petition for writ of *habeas corpus ad subjiciendum*, challenging his life imprisonment sentence because he was under the age of 21 when he committed the offense, and therefore was entitled to relief under **Miller v. Alabama**, 132 S.Ct. 2455 (U.S. 2012).[3] The PCRA court treated the petition as a PCRA petition, and after providing Pa.R.Crim.P. 907 notice, the court dismissed the petition without a hearing on June 24, 2014. Moore appealed. In a judgment order entered on February 11, 2015, a panel of this Court affirmed the PCRA court's order, concluding: (1) Moore could not benefit from **Miller** based on his age; and (2) Moore filed a patently untimely PCRA petition that did not come within any of the exceptions to the time bar,[4] and therefore, the PCRA court was without jurisdiction to review the matter. **Commonwealth v. Moore**, 120 A.3d 378 [1082 WDA 2014] (Pa. Super. 2015) (unpublished memorandum).

While his appeal was pending, Moore continued to file numerous pleadings with the PCRA court, including a *pro se* third PCRA petition on June

---

[3] In **Miller**, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against 'cruel and unusual punishments.'" **Miller**, 132 S.Ct. at 2460. We note Moore was 19 years old at the time he committed the offenses at issue.

[4] **See** 42 Pa.C.S. § 9545(b)(1)(i)-(iii).

12, 2014. On September 1, 2015, Moore also filed a *pro se* motion for post-conviction forensic DNA testing, which is at issue in the present appeal. The PCRA court denied his motion for DNA testing on November 3, 2015.[5] This *pro se* appeal followed.

Initially, we must determine whether the present appeal is timely. As stated above, the order from which Moore appeals was dated November 3, 2015. Moore is incarcerated, and his notice of appeal was docketed on December 14, 2015, which was well past the 30-day appeal period. **See** Pa.R.A.P. 903(a) ("[T]he notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken.").[6]

Under the "prisoner mailbox rule," a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing. **See generally, Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa. Super 2006). However, to avail oneself of the mailbox rule, a prisoner must supply

---

[5] In a separate order dated January 14, 2016, and filed six days later, the PCRA court also denied Moore's third PCRA petition. Moore filed a notice of appeal from that order on January 29, 2016, which is currently pending before this Court at Docket No. 162 WDA 2016. On March 21, 2016, this Court indicated the two appeals would be listed consecutively before a single panel. Nevertheless, based on the nature of the appeals, we have not consolidated them for review. This memorandum deals only with the pending appeal at Docket No. 1962 WDA 2015.

[6] Generally, "[u]pon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket." Pa.R.A.P. 905(a)(3).

sufficient proof of the date of the mailing. ***See Commonwealth v. Jones***, 700 A.2d 423 (Pa. 1997); ***Commonwealth v. Perez***, 799 A.2d 848 (Pa. Super. 2002) (documentation required to support when notice of appeal was placed in the hands of prison authorities for filing).

Here, Moore dated the certificate of service corresponding to the notice of appeal on December 3, 2015, which was within the 30-day period. Based on the record, and applying the "prisoner mailbox rule," we conclude that Moore has provided sufficient proof that he filed a timely notice of appeal. We may now address the merits of his argument.

In his sole issue, Moore asserts the PCRA court abused its discretion in denying his motion for DNA testing. ***See*** Moore's Brief at 3. Specifically, he argues his participation in the crimes was at issue during trial and no DNA evidence was presented tying him to the crimes. ***See id.*** at 3-4. Moore states he was never at the victim's residence and DNA testing "collected at the scene would prove this." ***Id.*** at 4-5. He also points to the following:

> DNA testing of Exhibit #38 Spermotoza of the victim if exculpatory would prove that [Moore] could not have had sex with the victim 2 or 3 days before her death. The collection of evidence at the victim's residence raised more questions than it did answers, Item Number C "suspected blood" found in the hallway[] was not photographed or tested for DNA.

***Id.*** at 5. Moreover, Moore contends many of the witnesses were not credible, including his co-conspirator, Galo. ***See id.*** at 5-7. He states the Commonwealth ignored a statement provided by a fellow prison inmate of Galo's, Allison Brook Flamm, in which Galo admitted to Flamm she held the

victim down while Moore stabbed the victim and then she, Galo, "did the rest." *Id.* at 7. Moore also complains his trial counsel was ineffective for failing to investigate Flamm's statement, because it "would have impeached Ms. Galo's testimony and raised questions about what really happened that horrific night and who was truly responsible." *Id.* Lastly, Moore alleges his confession should not be a bar to DNA testing because he was under the influence of drugs at the time and the investigating detectives threatened him with physical harm. *Id.* at 8.

When reviewing a PCRA court's order denying a petitioner's request for post-conviction DNA testing, we employ the same standard of review as when reviewing the denial of PCRA relief, that is, we must determine whether the ruling of the trial court is supported by the record and free of legal error. *Commonwealth v. Gacobano*, 65 A.3d 416, 419 (Pa. Super. 2013) (citations omitted).

Requests for post-conviction DNA testing are governed by statute at 42 Pa.C.S. § 9543.1, which provides in relevant part:

**§ 9543.1. Postconviction DNA testing**

**(a) Motion.-**

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

…

**(c) Requirements.**- In any motion under subsection (a), under penalty of perjury, the applicant shall:

(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

    (i) assert the applicant's actual innocence of the offense for which the applicant was convicted[.]

…

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

- 8 -

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

…

**(d) Order.-**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1.

The statute sets forth several threshold requirements to obtain DNA testing:  (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for

the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa.C.S.A. § 9543.1(a)(2). Additionally,

[T]he legislature delineated a clear standard—and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a prima facie case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish petitioner's actual innocence. We find no ambiguity in the standard established by the legislature with the words of this statute.

*Commonwealth v. Smith*, 889 A.2d 582, 584 (Pa. Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006) (emphasis added). The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. *Id.* at 585. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a prima facie case that the DNA results, if exculpatory, would establish actual innocence. *Id.* at 586.

***Commonwealth v. Williams***, 35 A.3d 44, 49-50 (Pa. Super. 2011), *appeal denied*, 50 A.3d 121 (Pa. 2012).[7]

Here, the PCRA court found the following:

> In the instant matter, [Moore] has not satisfied the requirements of 42 Pa.C.S.A. § 9543.1(a)(2). The evidence requested for DNA testing was available prior to [Moore]'s conviction and was not subject to DNA testing, although the technology for DNA testing existed at the time, and trial counsel did not seek funds from the court to pay for the testing which were refused by the court and the verdict was rendered after 1995. Therefore, the conditions required by 42 Pa.C.S.A. § 9543.1(a)(2) were not satisfied and the motion for DNA testing was properly denied.

> Furthermore, [Moore] has not satisfied 42 Pa.C.S.A. § 9543.1(c)(3), which required [Moore] to present a *prima facie* case that if the requested DNA testing gives exculpatory results, it would establish the petitioner's actual innocence of the crime. [Moore] has the burden to make a *prima facie* case that the results of the DNA testing, if exculpatory, would establish his actual innocence. ***Commonwealth v. Williams***, 35 A.3d 44 (Pa. Super. 2011). [Moore] has not satisfied this burden.

> The evidence to support the conviction was overwhelming. The evidence revealed that on November 28, 2003, [Moore] and his co-conspirator, Melissa Galo, abducted the victim, Karen Hanyo, demanding she pay the $50 that she owed [Moore] for drugs, and thereafter, when she was unable to obtain the $50,

---

[7] Furthermore, "[a] petitioner who is unable to obtain DNA testing under Section 9543.1 can still pursue an ineffective assistance of counsel claim under the PCRA for failure to request DNA testing of evidence at trial, but only if the PCRA petition is timely filed or otherwise meets one of the statutory exceptions to the timeliness requirements." ***Williams***, 35 A.3d at 50-51.

Here, while Moore does raise an ineffectiveness claim regarding a failure to investigate a witness, he does not assert counsel was ineffective for failing request DNA testing.

[Moore] stabbed her to death. Sharon George and Randall Stoddard testified to seeing the victim in the car driven by Ms. Galo, while [Moore] held the victim captive in the back seat, blindfolded, with a knife to her neck.

Ms. Galo testified for the Commonwealth. Ms. Galo testified that after she stopped the car and duct-taped the victim's hands, legs, and mouth, [Moore] pulled the victim out of the car and repeatedly stabbed the victim. [Moore] stabbed the victim 17 times, inflicting fatal wounds to her chest and neck. [Moore] confessed to the charges, stating that he stabbed the victim several times.

During the trial it was stipulated as follows: The following items were analyzed and these were the following results: That the electrical tape found binding the victim in her mouth area, hands and ankles, there were no latent prints that were developed and that there were no latent prints on the knife. The latent prints on the phone jack and the lighter fluid were negative. There was a palm print that was determined on the electrical tape. It was compared to [Moore] and Ms. Galo with inconclusive results.

The lack of [Moore]'s DNA in any of the items he requests for DNA testing would not disprove that [Moore] committed the crimes for which he was convicted. It would not disprove any of the testimony of the witnesses or undermine [Moore]'s confession.

Pursuant to 42 Pa.C.S.A. § 9543.1(d)(2), this Court has reviewed the entire trial record, and determined that there is no reasonable possibility that the DNA testing requested would produce exculpatory evidence to establish [Moore]'s actual innocence and therefore this Court is directed not to order the requested DNA testing. ***Commonwealth v. Williams***, 35 A.3d 44 (Pa. Super. 2011).

PCRA Court Opinion, 11/3/2015, at 3-5 (record citations omitted).

After a thorough review of the record, the parties' briefs, and the relevant case law, we find the PCRA court's opinion comprehensively discusses and properly disposes of the question presented in this appeal.

Accordingly, we affirm on the basis of the trial court's opinion, but add these additional comments.

First, we note a motion for DNA testing is not the proper venue to attack the credibility of witnesses, claim ineffective assistance of counsel, or challenge the propriety of one's confession, which is the focus of most of Moore's appeal. *See* Moore's Brief at 4-8. Next, we emphasize Moore's argument ignores the court's first finding – that he did not meet the requirements of Section 9543.1(a)(2) regarding timeliness: (1) the evidence at issue was discovered prior to his conviction; (2) the technology for testing existed at the time of his 2008 trial as evidenced by the DNA testing of other evidence;[8] (3) his case did not go to a verdict before January 1, 1995; and (4) Moore did not make any assertions that his counsel sought funds to pay for the testing and such a request was refused.

Moreover, Moore's argument regarding whether his DNA was found in the victim as the result of sexual relations two or three days before the stabbing is of no moment because he does not explain how that evidence would exculpate him from what transpired on the day of the murder. *See* 42 Pa.C.S. § 9543.1(c)(3). Lastly, to the extent Moore alleges there was no evidence tying him to the crimes, we reiterate that "[i]n DNA as in other areas, an absence of evidence is not evidence of absence. Furthermore, a

_____

[8] Indeed, one of the items Moore now seeks testing, the knife, was tested and the results were inconclusive. N.T., 4/1/2008-4/4/2008, at 174.

murder suspect may be convicted on wholly circumstantial evidence[.]"
***Commonwealth v. Heilman***, 867 A.2d 542, 546 (Pa. Super. 2005), *appeal denied*, 876 A.2d 393 (Pa. 2005) (concluding the absence of defendant's DNA evidence from the scene or from items removed the victim's body would not absolve him of guilt). Accordingly, we conclude Moore has failed to satisfy the requirements of Section 9543.1, the PCRA court did not err in denying his motion for DNA testing.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/21/2017