J-S32037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM RINICK | |
| Appellant | No. 900 EDA 2016 |

Appeal from the PCRA Order March 8, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0606601-2002

BEFORE: GANTMAN, P.J., STABILE, and FITZGERALD[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 26, 2017**

Appellant, William Rinick, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas dismissing his second Post Conviction Relief Act[1] ("PCRA") petition. Appellant argues the PCRA court erred in denying his petition for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1 and his "state *habeas corpus* petition" as untimely. We affirm.

The relevant facts and procedural history of this case are as follows.[2] In the early morning hours of October 31, 2001, Appellant shot and killed

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] For a more detailed description of the facts, please see this Court's prior memorandum affirming Appellant's judgment of sentence. ***See Commonwealth v. Rinick***, 3614 EDA 2003 (unpublished memorandum)

the decedent at close range in front of Michael Focoso. Following the shooting, Appellant and Michael Focoso placed their clothing and shoes in a single brown paper bag, which they set on fire on a dirt road near the Philadelphia Airport. On October 31, 2003, a jury convicted Appellant of first-degree murder[3] and related charges following the shooting death of the victim. The trial court sentenced Appellant to an aggregate term of life without parole. This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal. **See Rinick**, 3614 EDA 2003. Thereafter, Appellant appealed to the United States Supreme Court, which denied *certiorari* on November 14, 2005. **See Rinick v. Pennsylvania**, 546 U.S. 1021 (2005).

Appellant timely filed his first PCRA petition *pro se* on June 9, 2006. The PCRA court appointed counsel who filed several amended petitions. The Commonwealth subsequently filed a motion to dismiss the petition, and the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. However, on April 7, 2009, Appellant filed a *pro se* request for a **Grazier**[4] hearing. The PCRA court conducted the hearing and permitted Appellant to proceed *pro se*. Appellant

---

(Pa. Super. filed Feb. 7, 2005), *appeal denied*, 100 EAL 2005 (Pa. filed July 7, 2005).

[3] 18 Pa.C.S. § 2502(a).

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

thus filed another amended PCRA petition *pro se*, and the Commonwealth again responded with a motion to dismiss. The PCRA court subsequently issued Rule 907 notice and dismissed Appellant's petition on March 8, 2010. This Court affirmed, and our Supreme Court denied allowance of appeal. *See Commonwealth v. Rinick*, 774 EDA 2010 (unpublished memorandum) (Pa. Super. filed March 10, 2011), *appeal denied*, 252 EAL 2011 (Pa. filed Sept. 12, 2011).

On April 20, 2015, Appellant filed a *pro se* PCRA petition for "state *habeas corpus*" relief, in which he alleged he was to be returned to federal custody to begin serving his sentence on prior federal convictions, as his state sentence was ordered to run consecutive to any other sentence.[5] Thereafter, on December 31, 2015, Appellant filed a *pro se* PCRA petition for Section 9543.1 post-conviction DNA testing. The PCRA court issued Rule 907 notice, to which Appellant responded *pro se*. On March 8, 2016, the PCRA court dismissed both of Appellant's petitions as untimely. Appellant filed *pro se* a timely notice of appeal and a voluntary concise statement of

---

[5] Appellant was convicted of federal charges relating to the possession and distribution of cocaine. On May 7, 2003, the United States District Court for the Eastern District of Pennsylvania sentenced Appellant to 360 months' imprisonment and returned him to Pennsylvania state court for his pending murder case. Thereafter, a detainer was lodged against Appellant on May 14, 2003, requesting that the Pennsylvania state custodian notify the U.S. Marshals prior to Appellant's state release, so the U.S. Department of Justice could assume custody of Appellant for him to begin serving his federal sentence.

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[6]

When reviewing a PCRA court's order denying a petitioner's request for post-conviction DNA testing, we employ the same standard of review as when reviewing the denial of PCRA relief, that is, we must determine whether the ruling of the trial court is supported by the record and free of legal error. ***Commonwealth v. Gacobano***, 65 A.3d 416, 419 (Pa. Super. 2013) (citations omitted). Moreover, this Court has held that "the PCRA's one-year time bar does **not** apply to motions for the performance of forensic DNA testing under Section 9543.1." ***Commonwealth v. Brooks***, 875 A.2d 1141, 1146 (Pa. Super. 2005) (citation and footnote omitted).

Requests for post-conviction DNA testing are governed by statute at Section 9543.1, which provides in relevant part:

> **§ 9543.1. Postconviction DNA testing**
>
> **(a) Motion.**—
>
>> (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of

---

[6] We note that Appellant's voluntary Rule 1925(b) statement fails to raise any claims pertaining to his state *habeas corpus* petition. To preserve the requirements and purpose of Rule 1925(b), an appellant who files a voluntary Rule 1925(b) statement is held to the same requirements as an appellant who files a Rule 1925(b) statement pursuant to a court order. ***See Commonwealth v. Snyder***, 870 A.2d 336, 341 (Pa. Super. 2005) (stating the appellant waived the issues not raised in his voluntary Rule 1925(b) statement). Therefore, because Appellant did not raise the claim that he was to begin serving his federal sentence prior to his state sentence in his voluntary Rule 1925(b) statement, this claim is waived. ***See id.*** Thus, we shall only address Appellant's remaining claim on appeal regarding his petition for post-conviction DNA testing.

imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

\*    \*    \*

**(c) Requirements.—**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i)  specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i)  assert the applicant's actual innocence of the offense for which the applicant was convicted; and

\*   \*   \*

(3)    present a prima facie case demonstrating that the:

(i)   identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A)  the applicant's actual innocence of the offense for which the applicant was convicted;

\*   \*   \*

**(d)  Order.—**

(1)  Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i)   requirements of subsection (c) have been met;

(ii)  evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2)   The court shall not order the testing requested in a motion under subsection (a) if, after review of

the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

   (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

*   *   *

**(f)   Posttesting procedures.**—

(1)   After the DNA testing conducted under this section has been completed, the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings), during the 60–day period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief).

(2)   Upon receipt of a petition filed under paragraph (1), the court shall consider the petition along with any answer filed by the Commonwealth and shall conduct a hearing thereon.

(3)   In any hearing on a petition for postconviction relief filed under paragraph (1), the court shall determine whether the exculpatory evidence resulting from the DNA testing conducted under this section would have changed the outcome of the trial as required by section 9543(a)(2)(vi).

42 Pa.C.S. § 9543.1 (some subsections omitted).

The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel

sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 [Pa.C.S.] § 9543.1(a)(2). Additionally,

> [T]he legislature delineated a clear standard—and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence**. We find no ambiguity in the standard established by the legislature with the words of this statute.

*Commonwealth v. Smith*, 889 A.2d 582, 584 (Pa. Super. 2005), *appeal denied*, 905 A.2d 500 (Pa. 2006) (emphasis added). The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. *Id.* at 585. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a prima facie case that the DNA results, if exculpatory, would establish actual innocence. *Id.* at 586.

***Commonwealth v. Williams***, 35 A.3d 44, 49-50 (Pa. Super. 2011).

Instantly, Appellant's petition for post-conviction DNA testing alleges that the charred sneaker used as physical evidence against Appellant did not belong to him, but rather belonged to the Commonwealth's witness, Michael Focoso.[7] Appellant claims DNA testing would prove that Appellant never wore the sneaker and would, therefore, exculpate him. Nevertheless, Appellant has neither proven that he was unable to obtain DNA testing of the sneaker at the time trial, nor has he presented a *prima facie* case to demonstrate that DNA testing of the sneaker would establish his actual innocence. ***See*** 42 Pa.C.S. § 9543.1(a)(2), (c)(3); ***Williams***, 35 A.3d at 50.

In his petition, Appellant baldly asserts that trial counsel refused Appellant's request to have the sneaker tested for DNA, and because Appellant was indigent, he was unable to obtain private DNA testing himself. Moreover, Appellant merely alleges that DNA testing will reveal that the sneaker belonged to Focoso, which will automatically eliminate Appellant as the shooter and prove his innocence. However, Appellant's argument ignores the additional evidence presented against him at trial, which this Court held was sufficient for the jury to find Appellant guilty.

---

[7] Appellant's petition for DNA testing also alleges several claims regarding the plea and sentencing agreements between the Commonwealth and Michael Focoso in exchange for his testimony against Appellant. However, Appellant has abandoned these claims in his *pro se* brief. Therefore, we shall not address them.

> [Focoso] clearly testified that he observed Appellant shoot the victim at point blank range after Appellant asked Focoso to drive him to the victim's home. Focoso's testimony regarding the burned clothes was corroborated by the police. A witness who lived near the site of the murder testified that she saw Appellant and Focoso running down the street shortly after she heard gun shots.
>
> The jury was aware that Focoso was an accomplice and that the government offered him favorable treatment in return for his testimony. The jury was entitled to disbelieve the evidence Appellant introduced in an attempt to implicate Focoso.

***Rinick***, 3614 EDA 2003 (unpublished memorandum at 9) (citation omitted).

Therefore, even if DNA testing proved the sneaker did not belong to Appellant, it would not establish his actual innocence. ***See*** 42 Pa.C.S. § 9543.1 (c)(3); ***Williams***, 35 A.3d at 50; ***see also Commonwealth v. Heilman***, 867 A.2d 542, 546-47 (Pa. Super. 2005) ("On its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires an appellant to demonstrate that favorable results of the requested DNA testing '**would establish**' the appellant's actual innocence of the crime of conviction. Heilman has failed to make such a demonstration, nor could he. In DNA as in other areas, an absence of evidence is not evidence of absence." (citation omitted)). Accordingly, we affirm the PCRA court's denial of Appellant's petitions. ***See Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis." (citation omitted)).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2017