J-A07010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EDWARD LUCKETT | : | |
| | : | |
| Appellant | : | No. 987 MDA 2020 |

Appeal from the Order Entered July 9, 2020
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001573-1995

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JULY 22, 2021**

Edward Luckett appeals *pro se* from the July 9, 2020 order denying his request for post-conviction DNA testing.  We affirm.

The pertinent facts were previously summarized by this Court as follows:

> [O]n October 28, 1990, [A]ppellant, along with Andrew Dillon and another man, went to the home of 86 year old Agnes DeLuca in order to rob her.  Dillon broke a window, opened the door, and let the group in.  Once inside, DeLuca screamed.  Appellant grabbed DeLuca around the neck to quiet her and in doing so broke her neck and paralyzed her.  They laid DeLuca on her bed while they looked around for valuables that they stashed in a pillowcase.  They beat her with blunt force in the head, stabbed her five times in the neck and twice in the back.  The three individuals then anally raped and asphyxiated her.  Her body was found two days later.

---

[*] Former Justice specially assigned to the Superior Court.

*Commonwealth v. Luckett*, 768 A.2d 885 (Pa.Super. 2000) (unpublished memorandum), *appeal denied*, 792 A.2d 1255 (Pa. 2001).

Between 1990 and 1995, Appellant at different times and in different prisons, made detailed statements to three inmates implicating himself in the victim's murder. *Id*. In addition to his revealing discussions with fellow inmates, Appellant made incriminating statements to two detectives during an interview at the State Correctional Institution at Greene. *Id*. During trial, the Commonwealth did not use the hair, blood, or semen samples collected from the crime scene, autopsy, or rape kit, to inculpate Appellant in the murder.[1] Rather, the prosecution relied upon Appellant's own statements, the testimony of other witnesses, and other circumstantial evidence in proving the charges against Appellant.

On November 18, 1998, Appellant was convicted of first-degree murder, conspiracy to commit first-degree murder, robbery, conspiracy to commit robbery, burglary, conspiracy to commit burglary, and conspiracy to commit

_____

[1] None of the forensic testing of the crime scene or the victim's rape kit tied Appellant to the crime. Appellant's blood type did not match any of the blood found at the scene. *See* N.T. Jury Trial 11/5/98, at 125, 127, 136-37, 141-42, 145 (Pennsylvania State Police Analyst George Surma testifying that Appellant's blood type was not found on any items at the crime scene). DNA testing of the sperm found on and inside the victim was inconclusive. N.T. 11/6/98, at 157. Finally, while the mitochondrial DNA found on hair collected from the victim was consistent with co-defendant Andrew Dillon, it was not a match for Appellant. *See* N.T. Jury Trial, 11/6/98, at 125, 136-39.

causing or risking a catastrophe.[2]  On January 22, 1999, Appellant was sentenced to a term of life imprisonment followed by several consecutive state sentences.  This Court affirmed the judgment of sentence and Appellant's petition for allowance of appeal was denied on December 5, 2001.  **See Commonwealth v. Luckett**, **supra**, *appeal denied*, 792 A.2d 1255 (Pa. 2001).  Appellant sought no further review.  Thus, his judgment of sentence became final ninety days later on March 5, 2002.  **See** 42 Pa.C.S. § 9545(b)(3).

On December 14, 2001, Appellant filed a timely *pro se* PCRA petition, raising many claims of trial counsel ineffectiveness and attaching the results of the polymer chain reaction DNA testing to his petition.  New counsel was appointed and a hearing was held.  At the hearing, Appellant testified, in part, that the DNA sperm test results excluded him as a potential contributor and that his counsel was ineffective for failing to subpoena the DNA expert who performed the testing in his case.[3]  N.T. PCRA Hearing, 8/8/03, at 8-13.  In 2005, new counsel was appointed and a supplemental amended first PCRA

---

[2] Charges relating to the rape of the victim were withdrawn pre-trial, after the Commonwealth was unable to forensically link Appellant to the sexual assault of the victim.

[3] In fact, the DNA test results were inconclusive.  N.T. Jury Trial, 11/6/98, at 133-34 (Special Agent Mark Wilson conducting DNA testing on body hair from the crime scene and testified that he did not conduct DNA testing of the sperm because "it did not meet the unit's case acceptance policy."); *id* at 156-57 (Detective Carlson testified that he sent the sperm to Dr. Blake in California, before sending it to the FBI, and then to Cellmark in Maryland.  "We were not able to identify any donor or donors with regard to that testing.").

petition was filed with leave of court.[4]  One of Appellant's eleven ineffective assistance of counsel claims challenged trial counsel's effectiveness in investigating and cross-examining a forensic expert on the significance of the "inconclusive" sperm DNA testing results.  On October 14, 2005, a second hearing was held, at which Appellant and his prior counsel testified.  In December of 2005, the judge who presided over Appellant's trial and initial PCRA proceedings retired.  The case was reassigned, and in 2007, the new PCRA court denied Appellant's PCRA petition by memorandum and order. After a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), Appellant timely appealed to this Court.  *See Commonwealth v. Luckett*, 963 A.3d 568 (Pa.Super. 2008) (unpublished memorandum).  On February 18, 2009, our Supreme Court denied Appellant's petition for allowance of appeal.  *See Commonwealth v. Luckett*, 965 A.2d 245 (Pa. 2009).

In 2009, Appellant filed a petition for a writ of *habeas corpus* in the United States District Court for the Middle District of Pennsylvania, in which he also challenged counsel's effectiveness in his cross-examination of Agent Wilson regarding the presence of sperm on the victim's body.  *See Luckett v. Folino*, No. 09-0378, 2010 WL 3812329 (M.D.Pa. 2010) (denying

---

[4] While the petition remained pending in the PCRA court, Appellant filed a second *pro se* PCRA petition which the PCRA court dismissed.  We affirmed that decision on appeal.  *See Commonwealth v. Luckett*, 869 A.2d 10 (Pa.Super. 2004) (unpublished memorandum) (affirming dismissal of second PCRA petition while first PCRA petition was still pending).

objections to report and recommendation).  This petition was denied.[5]  ***Id***.

Appellant subsequently filed nine PCRA petitions, none of which requested

DNA testing or was successful in attacking his convictions or sentence.  ***See***

***Commonwealth v. Luckett***, 4 A.3d 701 (Pa.Super. 2010) (unpublished)

(affirming dismissal of second PCRA petition); ***Commonwealth v. Luckett***,

82 A.3d 465 (Pa.Super. 2013) (unpublished memorandum) (affirming

dismissal of third PCRA petition); ***Commonwealth v. Luckett***, 106 A.3d 170

(Pa.Super. 2014) (unpublished memorandum) (affirming dismissal of fourth

PCRA petition); ***Commonwealth v. Luckett***, 153 A.3d 1114 (Pa.Super.

2016) (unpublished memorandum) (affirming dismissal of fifth PCRA petition),

*appeal denied*, 170 A.3d 1063 (Pa. 2017); ***Commonwealth v. Luckett***, 194

A.3d 682 (Pa.Super. 2018) (unpublished memorandum) (affirming dismissal

of sixth, seventh, and eighth PCRA petitions); ***Commonwealth v. Luckett***,

222 A.3d 792 (Pa.Super. 2019) (unpublished memorandum) (affirming

dismissal of ninth PCRA petition).[6]

_____

[5] In its report and recommendation, the Magistrate Judge noted that "Luckett has been a prolific, if procedurally chaotic, litigant, which has complicated these proceedings by greatly confusing the procedural posture of this case." ***Luckett v. Folino***, No. 09-0378, 2010 WL 3812329 (M.D.Pa. 2010), *adopted*, 2010 WL 3806822, at *2 (M.D. Pa. Sept. 23, 2010).  Reviewing the record over ten years later, we too found our review of Appellant's claims complicated substantially by Appellant's repeated practice of filing new PCRA petitions while a previous petition was still pending.

[6] In his ninth PCRA petition, Appellant raised a claim of newly discovered evidence on the basis of a Washington Post article discussing deficiencies in
*(Footnote Continued Next Page)*

On February 3, 2020, in addition to submitting his tenth *pro se* PCRA petition, Appellant filed the instant petition seeking to have certain evidence submitted for DNA testing pursuant to 42 Pa.C.S. § 9543.1, which governs requests for post-conviction DNA testing. While this motion was filed simultaneously with Appellant's tenth PCRA petition, the PCRA court correctly treated it as an independent filing.[7] On July 9, 2020 the PCRA court issued a memorandum and order denying Appellant's petition for DNA testing after determining that the request was untimely. This appeal followed.[8] Appellant and the court both complied with Pa.R.A.P. 1925.

_____

FBI training in hair and blood analysis. When affirming the dismissal of this petition, we pointed out that "Appellant [had] not asserted in the instant Petition that his conviction relied upon faulty DNA analysis." ***See Commonwealth v. Luckett***, 222 A.3d 792 (Pa.Super. 2019) (unpublished memorandum at 8).

[7] Although the legislature placed § 9543.1 "within the larger statutory framework of the PCRA," the litigation of a motion for DNA testing "is, in substance, a wholly separate proceeding from litigation of a PCRA petition." ***Commonwealth v. Scarborough***, 64 A.3d 602, 609 (Pa. 2013) (addressing the distinction between a motion for DNA testing and a PCRA petition and holding that the denial of a motion under § 9543.1 was not an interlocutory order within a PCRA proceeding, but a final, appealable order under Pa.R.A.P. 341(b)); ***Commonwealth v. Gacobano***, 65 A.3d 416, 419 (Pa.Super. 2013) ("While the PCRA petition filed in this case comingled the DNA test request with other PCRA-based requests for relief, the two forms of relief must be bifurcated and the DNA testing issue is to be addressed first.").

[8] During the pendency of this appeal, Appellant filed two applications to correct the original record pursuant to Pa.R.A.P. 1926. ***See*** Application for Correction of the Original Record, 1/8/2020; Application for Relief, 1/8/21. Rule 1926 provides a means to supplement the certified record on appeal when something material "is omitted from the record by error, breakdown in

*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues for our review, which we have reordered for ease of disposition:

> I. PCRA court erred in failure to consider [Appellant's] ¶¶ 36, 37, 38 claims in determining whether DNA motion filed in a timely manner[.]
>
> II. PCRA court erred in failure to review trial court record with regards to: (A) Dillon testify falsely about pleading guilty to both conspiracy to burglary, specific intent as accomplice or principle and; (B) "Hung" jurors finding Jefferson "not guilty" in light of mismatch '96 (mtDNA) sequencing in determining of reasonable probability of actual innocence, thus violative of sec. 9543.1(a)(6), (d)(2)(i)[.]
>
> III. PCRA court erred in failure to consider [Appellant's] ¶¶ 2, 4, 5, 13 and actual innocence claims 20-25 (PG. 11, 12) In determining whether identity/participation at issue," thus violative of sec. 9543.1(a)(5) (confession), (6), (c)(3)(i)(a), (d)(2) reasonable possibility/probability, (4) (explanation)[.]

_____

processes of the court, or accident[.]" Pa.R.A.P. 1926(b). The Rule is a tool used to correct clerical errors, supplementing the record with transcripts, trial court opinions, or other documents that should have been certified for our review but were mistakenly omitted. **See**, **e.g.**, **Commonwealth v. McDonald**, 428 A.2d 174 (Pa.Super. 1981) (admitting a jury selection waiver that was erroneously excluded from the certified record).

Instantly, Appellant seeks to use Rule 1926 to correct a perceived oversight, making sure we have his jury trial and preliminary hearing transcripts, and his motion for DNA testing, which we do. Therefore, these portions of his two applications are denied as moot. However, Appellant also wishes to add various unspecified docket entries that pertain to his co-defendants' Andrew Dillon and Jefferson Price. Appellant has not specified what these documents are nor whether they were ever considered or admitted by the trial court. We use Rule 1926 to correct omissions from the certified record of documents filed in the court below, not to allow the parties to expand the record through the addition of new documents. **See In re F.C. III**, 2 A.3d 1201, 1212 (Pa. 2010) (affirming that appellate courts will not consider issues not presented to the trial court). Accordingly, we deny the remaining portions of Appellant's Rule 1926 applications.

IV. PCRA court erred in failure to consider ¶¶ 44, 47 (data bank theory); ¶ 48 (underrepresents) 319 (African Am.); 334 (Caucasians); FBI '96 (data base); ¶ 2 population frequency, statistical probability (PCR)-DNA samples ¶ 45 (1.3, 4) and ¶ 46 (2, 3)  In determining reasonable probability DNA testing produce exculpatory evidence of applicant's actual innocence.

V. Objection to PCRA court's non-compliance with Pa.R.Crim.P. 907(a) (20-day notice) of intent to dismiss without a hearing[.]

Appellant's brief at 4.

The following principles govern our consideration of Appellant's claims. We review the PCRA court's decision to grant or deny a post-conviction petition for DNA testing to determine whether the findings of the PCRA court are supported by the record and free of legal error.  *See Commonwealth v. Conway*, 14 A.3d 101, 108 (Pa.Super. 2011) ("Post conviction DNA testing falls under the aegis of the [PCRA] . . . , and thus, our standard or review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." (footnote and citation omitted)).

In his motion, Appellant sought DNA testing of the blood of Appellant, co-defendant Dillon, co-defendant Jefferson, A.J. Garrin, and Ron Davis against the blood, hair, and sperm recovered from the crime scene and rape kit.  *See* Motion for DNA testing, 2/24/20, at 3-4.  Appellant also listed five DNA tests that he claimed were not available during his 1998 trial, asserted that his identity was at issue, and claimed that further DNA testing would show that other individuals were involved in the crime, therefore, he was innocent.

The PCRA court found Appellant's motion for DNA testing untimely, observing that the evidence which Appellant sought to have tested had been available for over twenty years, and most of it was already subject to DNA testing. *See* PCRA Opinion, 7/9/20, at 7. Further, Appellant had provided little detail to support his claim that advances in technology mandated testing. *Id*. at 7-8. The PCRA court pointed out that Appellant relied on a 2004 publication explaining "new technology," but, despite filing several PCRA petitions over the ensuing sixteen years, had not requested DNA testing until 2020. *Id*. The PCRA court also found Appellant's allegation of actual innocence problematic, since the presence of other individuals' DNA and the absence of Appellant's would not exonerate him. *Id*. at 7-8, 8-9. Accordingly, the PCRA court denied the petition. *Id*.

Appellant argues the PCRA court's timeliness finding by citing 42 Pa.C.S. § 9543.1(a)(1), which states that a petition can be filed "at any time." *See* Appellant's brief at 9. The Commonwealth responds that Appellant is improperly viewing one section of the statute in isolation in order to advance his inaccurate argument. *See* Commonwealth's brief at 7. Instead, the Commonwealth argues that the PCRA court correctly concluded that the petition was not filed "in a timely manner" as required by § 9543.1(a)(4), since the evidence was subject to DNA testing pre-trial, Appellant had not shown how technology had advanced since that time, and while Appellant had filed nine PCRA petitions, he waited until they were denied to raise the issue

of DNA testing. Indeed, while the DNA statute was passed in 2002, and the alleged new technology became available in 2004, Appellant waited until 2020 before seeking to re-test evidence he had known about for decades. We agree with the Commonwealth that the PCRA court properly denied Appellant's request.

Our legislature enacted 42 Pa.C.S. § 9543.1 in 2002, in order to provide previously-convicted individuals with an avenue to utilize advances in forensic DNA testing that were not available to them at the time of their trials. While the PCRA's one-year time bar does not apply to petitions seeking the performance of forensic DNA testing under § 9543.1, such petitions are not wholly without time constraints. Section 9543.1(a) provides, in relevant part:

> (1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at **any time** for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
>
> (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results . . .
>
> . . .
>
> (4) DNA testing may be sought **at any time if the motion is made in a timely manner** and for the purpose of demonstrating

the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

42 Pa.C.S. § 9543.1(a) (emphasis added).

Our Supreme Court has analyzed § 9543.1 and found that when determining timeliness, the court must consider the facts of each case and decide whether the purpose of a petitioner's request is to demonstrate his actual innocence or to delay the execution of his sentence or administration of justice. *See Commonwealth v. Edmiston*, 65 A.3d 339, 357 (Pa. 2013). In *Edmiston*, the defendant was convicted in 1989 for a murder committed in 1988. In 2002, when § 9543.1 was enacted, the defendant did not seek DNA testing as part of a pending PCRA petition. Instead, he waited until 2009 to request DNA testing. Ultimately, our Supreme Court affirmed the order of the PCRA court denying relief, as the petition was untimely, since the defendant had known of the existence of the physical evidence he was seeking to test for over twenty years and had not sought DNA testing within a reasonable amount of time after the statute was passed, despite filing a PCRA petition during that time frame.[9] *Id*. at 357-59 *See also Commonwealth*

_____

[9] We continue to rely on the reasoning of *Edmiston*, even though 42 Pa.C.S. § 9543.1 was amended to add the language "at any time" after *Edmiston* was issued. *See* 42 Pa.C.S. § 9543.1(a)(1) (amended 12/24/18). This view is supported by the fact that the legislature simultaneously added qualifying language, requiring the motion to be "made in a timely manner." *See* 42 Pa.C.S. § 9543.1(a)(4). Comparing the two versions of the statute, it is clear that the legislature intended to expand the number of individuals eligible to apply for DNA testing, *i.e.*, removing the language making only those actively *(Footnote Continued Next Page)*

*v. Walsh*, 125 A.3d 1248, 1257 (Pa.Super. 2015) (affirming the PCRA court's finding that a petition for DNA testing was untimely where the defendant waited almost ten years after conviction and litigated three other PCRA claims, none of which sought DNA testing).

Here, the record supports the PCRA court's finding that the petition was untimely filed. Appellant, despite being aware of the existence of all of the physical evidence and previous DNA testing for over twenty-five years, and unsuccessfully litigating ten PCRA petitions between 2001 and 2021 as well as a petition for writ of *habeas corpus*, did not request DNA testing until 2020, approximately eighteen years after the passage of § 9543.1. Our review of the record confirms the PCRA court's findings. Appellant was plainly aware of the existence of the physical evidence and the results of previous petitions, since he challenged his trial counsel's effectiveness in handling the DNA results in his first PCRA petition in 2001 and his petition for writ of *habeas corpus* in 2009. Despite being aware of the existence of this physical evidence and adept at the post-conviction filing process, Appellant never requested DNA re-testing until 2020. Accordingly, we find that the PCRA court did not err when it found that Appellant failed to put forth his request for DNA testing in a timely manner.

---

serving sentences eligible for relief, while expanding the "timeliness" language in order to guard against exploitation of the statute by those who could have filed their petitions sooner. *See* 42 Pa.C.S. § 9543.1(a)(1).

Even assuming, *arguendo*, that Appellant's request was timely, we agree with the PCRA court's finding that he did not establish a *prima facie* case that DNA testing would establish his innocence. **See** PCRA Opinion, 7/9/20, at 8-9. In relevant part, the statute governing post-conviction DNA testing of specific evidence provides as follows:

> **(c) Requirements**. – In any motion under subsection (a) [regarding forensic DNA testing], under penalty of perjury, the applicant shall:
>
> > . . . .
>
> > (3) present a *prima facie* case demonstrating that the:
>
> > > (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and
>
> > > (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
>
> > > > (A) the applicant's actual innocence of the offense for which the applicant was convicted.
>
> > > > . . . .
>
> **(d) Order**. –
>
> > . . . .
>
> > (2) The court shall not order the testing requested . . . if, after review of the record of the applicant's trial, the court determines that there is no reasonable probability that the testing would produce exculpatory evidence that:
>
> > > (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1

Therefore, Appellant must adduce *prima facie* evidence that, assuming exculpatory results, the evidence would demonstrate his actual innocence of the offense for which he was convicted. In **Conway**, **supra** at 109 (quoting **Schlup v. Delo**, 513 U.S. 298, 327 (1995)), we explained that actual innocence in this context, is demonstrated by evidence that "makes it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'" **See also In re Payne**, 129 A.3d 546, 556 (Pa.Super. 2015). We concluded, "this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." **Conway**, **supra** at 109 (quoting **Schlup**, **supra** at 329).

Here, Appellant's convictions were based on a theory of accomplice liability and the existence of a conspiracy to rob and murder the victim. It may very well not have been Appellant who sexually assaulted the victim. However, Appellant was not charged with or convicted of that act. Therefore, even if the sperm was submitted for re-testing and the results pointed to someone else, the results would not exonerate him. Additionally, because his murder, burglary, and robbery convictions were based on a theory of accomplice liability, the absence of Appellant's DNA in the hair and blood found at the crime scene would also not establish Appellant's innocence.

Moreover, this Court has repeatedly held that the mere absence of a defendant's DNA, by itself, does not satisfy the "actual innocence"

requirement under § 9543.1(d)(2)(i). ***See Commonwealth v. Smith***, 889 A.2d 582, 586 (Pa.Super. 2005) (applicant not entitled to DNA testing on material under victim's fingernails where no evidentiary basis existed on which to infer assailant deposited DNA there during attack) ***See also***, ***e.g.***, ***Commonwealth v. Brooks***, 875 A.2d 1141, 1144 (Pa.Super. 2005) (DNA testing properly denied where no evidence of record supported contention that perpetrator left behind biological material); ***Commonwealth v. Heilman***, 867 A.2d 542, 547 (Pa.Super. 2005) ("In DNA as in other areas, an absence of evidence is not evidence of absence."). Rather, a petitioner must present some quantum of additional evidence in addition to the absence of petitioner's DNA to establish entitlement to relief.

Appellant advances a 'data bank' theory to support his claim, in which he postulates that any DNA results obtained from testing that prove the presence of an unknown person could be run through state and federal data banks for a match, which, if successful, would lead to the identification of a separate assailant and his own exoneration. ***See*** Appellant's brief at 16-23. The PCRA court responded as follows:

> [A]t least two other codefendants participated in these crimes, and there was testimony that other individuals were also present. Other individuals were involved with [Appellant]in committing these crimes and the jury found [Appellant] guilty of conspiracy to commit first degree murder, conspiracy to commit robbery, conspiracy to commit burglary, and conspiracy to commit causing or risking a catastrophe. Because a defendant need not commit an overt act to be convicted of conspiracy, DNA evidence is irrelevant to the conspiracy convictions and the absence of

- 15 -

[Appellant]'s DNA will not disprove that he participated in a conspiracy and will not exonerate him.

PCRA Court Opinion, 7/9/20, at 9. We agree.

In **Conway**, the appellant was convicted in the stabbing death of the victim. Conway claimed he did not kill the victim, but discovered her body when he entered her store to make a purchase. He alleged that he touched her to determine whether she had a pulse and untie her hands. In the process, Conway conceded that he may have tripped and fallen onto her. At trial, the Commonwealth introduced no DNA or scientific evidence tying Conway to the crime. Seeking post-conviction DNA testing of several items from the crime scene, Conway advanced several arguments, including the 'data bank' theory. **Conway**, **supra** at 110 (explaining the 'data bank' theory). On appeal, this Court found Conway's proffered theory "plausible" and concluded that, under the facts of the case, "there is no question that the development of additional evidence – evidence that can be easily obtained by DNA testing – will add to the reliability of the reconstruction of the events of that tragic day." **Id**. at 112.

Unlike the appellant in **Conway**, here, Appellant was convicted on a theory of accomplice liability and forensic testing results were generated and admitted at trial, excluding Appellant as a potential contributor to the blood or hair recovered. N.T. Jury Trial 11/5/98, at 125-45 (Appellant's blood type was not present at the crime scene); N.T. Jury Trial 11/6/98, at 125, 136-39 (hair collected from the crime scene was not a match for Appellant). DNA

- 16 -

testing of the sperm recovered as part of the rape kit of the victim was inconclusive. *See* N.T. Jury Trial, 11/6/98, at 157. However, Appellant was not convicted of sexually assaulting the victim. Accordingly, the results generated as a result of re-testing the sperm would have no bearing on Appellant's guilt or innocence. Since, Appellant failed to establish a *prima facie* case under § 9543.1(c)(3), we find that the PCRA court did not err in denying Appellant's request for DNA testing.

Finally, Appellant contends that the PCRA court failed to issue notice of its intent to dismiss his petition pursuant to Pa.R.Crim.P. 907. Assuming for the sake of argument that the notice requirement of Rule 907 applies to the dismissal of Appellant's § 9543.1 petition, Appellant fails to indicate how he was prejudiced. Appellant does not claim that he could have amended the petition to remedy any of the deficiencies that formed the basis of the court's decision to dismiss it. Accordingly, no relief is due. S*ee Commonwealth v. Sullivan*, 240 A.3d 120 (Pa.Super. 2020) (non-precedential decision) (holding any violation of Rule 907 was harmless where no amendment to the petition would have altered the result).

Upon a review of the record and the PCRA court's explanation, we cannot conclude that the PCRA court's decision was an abuse of discretion. *See Walsh*, *supra* at 1245-55 ("The statutory standard to obtain testing requires more than conjecture or speculation; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence"). Under the

facts and circumstances of the present case, we have no reason to disturb the court's decision to deny Appellant's request for DNA testing. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/22/2021